*In re* ESTATE OF MARY A. MURPHY, Deceased (Francis Murphy, Petitioner-Appellant, v. The Estate of Mary A. Murphy, Eileen M. Casey, Ex'x, Respondent-Appellee).

First District (5th Division)   No. 84—2066

Opinion filed November 6, 1987.

Richard Altieri, of Chicago, for appellant.

J. Stirling Mortimer, Ltd., of Chicago for appellee.

JUSTICE PINCHAM delivered the opinion of the court:

Mary A. Murphy died on November 7, 1979. Her will bequeathed one-half of her estate to her son, William Casey. Her will provided that the other one-half of her estate was to be held in trust by William's wife, Eileen M. Casey (Eileen), for the benefit of the deceased's other son, Francis Murphy (Francis), petitioner-appellant in this appeal. The will designated Eileen as the executrix and testamentary trustee.

In issue here are three joint tenancy accounts of the deceased, Mary A. Murphy, and her son, William Casey, the surviving joint tenant:

(1) Talman Federal Savings & Loan Association of Chicago, Certificate of Deposit No. 519507—7 in the amount of $10,000;

(2) Bell Federal Savings & Loan Association of Chicago, Certificate of Deposit No. 1053861, in the amount of $10,000; and

(3) 1st Security Bank of Cary Grove, Treasury Bill No. 2978, in the amount of $10,000.

Though initially listed in Eileen's first final account filed March 11, 1982, as assets of the deceased's estate, these joint accounts were omitted as assets of the deceased's estate in the first amended final account. At the proceedings before the trial court on July 8, 1983, the following occurred:

"MR. MORTIMER [Attorney for the Estate]: For the record, in the Amended Final account we did remove from the Estate previously tendered a Talman Federal Savings and Loan C.D. and a Bell Federal Savings and Loan C.D., which we learned at the time of the filing were joint tenancies. I also might ask the Court to delete on the face, Item Number 8, 1st Security Bank of Cary Grove, Treasury Bill 2978, which I learned also is a joint tenancy account and which the surviving joint tenant is claiming, and she [sic] is in court this morning.

MR. ALTIERI [Attorney for Francis Murphy]: To which I object.

MR. MORTIMER: She [Eileen Casey] is gratuitously ten-

dered without objection, and you may examine her.

THE COURT: You may proceed counsel.

MR. ALTIERI: Me?

THE COURT: Yes.

MR. ALTIERI: I don't think it is my duty. It is their contention.

THE COURT: I disagree.

MR. ALTIERI: He filed the Petition.

MR. MORTIMER: Counsel asked for the hearing to cross-examine this woman.

THE COURT: Wait, gentlemen. This is an alleged joint tenancy account. According to Mr. Mortimer it was entered on the inventory and account in error.

* * *

MR. MORTIMER: It had been represented to the Court these were never ever included in the Estate assets.

THE COURT: You [Richard Altieri, attorney for Francis Murphy] have the duty to proceed. If you don't want to proceed, then I will tell you it is your obligation to proceed on a Recovery Citation to attempt to recover these funds for the Estate.

* * *

If the situation is she has entered those accounts into the inventory and the final account in error, and they are truly joint tenancy accounts, you have the obligation to proceed.

* * *

MR. ALTIERI: I am talking procedure, if the Court please, in this hearing now. Since the Executrix has come before this Court, no Petition is filed here to delete them, I think it is the burden of the Executrix to go forward and tell the court why she is deleting the account. It should not be the burden of the heir-at-law.

THE COURT: Do you want to proceed counsel?

MR. ALTIERI: I am ready, your Honor.

THE COURT: Do you want to proceed to question Eileen Casey? If not, I will terminate the hearing and allow counsel to withdraw the other item from the final account, because he states it is an error.

MR. MORTIMER: On the face I ask it be deleted.

* * *

Do you wish to examine this witness, whom I have tendered without objection, or not?

MR. ALTIERI: Without the formal Petition on file, no Judge."

We agree with petitioner Francis that the trial court erred in placing the burden on him to establish the impropriety of Eileen's removal of the joint tenancy accounts of the deceased and her son William Casey as assets of the estate. In *In re Estate of Roth* (1974), 24 Ill. App. 3d 412, 416, 321 N.E.2d 81, the court held:

"The basic rule is it is the burden of the executor to maintain by proof items entered in the account as being just and proper when objections are filed. [Citation.] Whenever objections are timely filed the burden is on the administrator to maintain by proof that the items objected to are just and proper."

In *Ilg v. Continental Illinois National Bank & Trust Co.* (1968), 94 Ill. App. 2d 143, 147-48, 236 N.E.2d 316, the court stated:

"Section 171 of the Probate Act requires the executor of an estate to file an inventory of all property comprising the decedent's estate, both real and personal. Ill. Rev. Stat. 1965, ch. 3, par. 171. The inventory constitutes an initial listing of assets, title to which may or may not in fact be in the decedent. Thus, it has long ago been reasoned that the statutory provision requiring an executor to file an inventory of a decedent's property with the court involves a 'preliminary investigation to determine probabilities, and not ultimate rights' and that the matter of disputed property is thereby brought before the court, 'so that an adjudication in the interest of the estate on such property may be had.' *Simms v. Guess* [1893], 52 Ill. App. 543, 546. Once such asset has been inventoried in an estate, *the burden then devolves upon the party who likewise claims title to or an interest in the asset to take such necessary and timely steps to preserve whatever interest he may have therein.* The filing of a claim within the statutory period preserves the question of disputed title until the merits can be determined at some later time, and conversely a claim not filed within the time prescribed by the statute is barred as to all assets inventoried in an estate within the claim period." (Emphasis added.)

Thus, in the case at bar, after the three joint accounts were inventoried as assets of the estate, the trial court erred in allowing Eileen to delete the joint accounts as assets of the estate merely on the oral statements of the attorney for the estate. The trial court repeatedly admonished Francis that he should file a citation to recover assets.

From the record before us, it is clear that Eileen, the executrix, did not meet the burden of proof placed upon her when Francis objected to her deletion of the three joint accounts as assets of the estate. In its insistence that Francis file a citation to recover the assets of the estate, the trial court continued to overlook the fact that these joint tenancy accounts were initially inventoried as assets of the estate and were thereafter deleted as assets without a proper legal, evidentiary explanation.

For these reasons, the trial court's order which approved the fifth amended final account, discharged Eileen as executrix and closed the estate is reversed and the cause is remanded with directions to reopen the estate and to conduct a hearing on Francis' objections to the deletion of the joint tenancy accounts as assets of the estate. At this hearing, the burden of proof is on the executrix to establish justification for the deletion.

Our reversal of this cause renders it unnecessary to address the additional issues raised on appeal.

Reversed and remanded with directions.

SULLIVAN, P.J., and McMORROW, J., concur.